[Civil No. 4425.   Filed July 16, 1941.]

[115 Pac. (2d) 244.]

L. A. JOHNSON, as State Dairy Commissioner of the State of Arizona, Petitioner, v. ANA FROHMILLER, as State Auditor of the State of Arizona, Respondent.

Mr. Richard O. Johnson, for Petitioner.

Mrs. Ana Frohmiller, Respondent, *in propria persona*.

Messrs. Snell & Strouss and Mr. Mark Wilmer, *Amici Curiae*.

McALISTER, J.—An alternative writ of *mandamus* was issued by this court upon the petition of L. A. Johnson, commanding the state auditor to issue him a warrant on the treasurer of the State of Arizona in payment of a claim for certain expenses incurred by him in the discharge of his duties as state dairy commissioner, or show cause why she has not done so.

The facts upon which the writ was asked were, according to the allegations of the petition, these: The petitioner was the state dairy commissioner and had been since some time prior to June 16, 1941. On June 19th he filed with the state auditor for approval and payment a claim for $11 for traveling expenses incurred by him in the discharge of his official duties, the claim being verified and approved by him as head of the department of the state dairy commission.

There were at the time and still are sufficient funds to the credit of that department appropriated by the legislature to pay the claim but the auditor rejected it, giving her reasons therefor. Whereupon the claim, fully itemized, verified and approved by petitioner was presented to the auditor the second time for approval and was again rejected by that officer who reported the fact of her rejection to the governor. Thereafter the petitioner presented the claim to the governor for approval and he also rejected it upon the same ground the auditor had, namely, that chapter 105, Session Laws of 1941, repealed section 50–902, Arizona Code of 1939, the one creating the office of state dairy commissioner, and thereby divested petitioner of his powers, duties and privileges as such officer from and after the effective date of that act. Such refusal was, however, the petition alleges, unjustified for two reasons, first, chapter 105 did not repeal section 50–902 and, second, if it did, section 1–107, Id., is applicable, and under it the petitioner continues to discharge the functions of the state dairy commissioner.

In response to the order to show cause the auditor filed a general demurrer to the petition and to support it relies upon the proposition, first, that the statute creating the office of state dairy commissioner was repealed by chapter 105, Session Laws of 1941, and, second, that the provisions of section 1–107, *supra,* do not apply, because the duties of that office were transferred to another department.

The first question presented, therefore, is whether the office of state dairy commissioner was repealed by chapter 105, which went into effect on June 16, 1941. This office was first created in 1918 by the enactment of chapter 8 of the First Special Session of the Third Legislature and, with some amendments by the Fourth Legislature, chapter 123 was carried into the Revised Code of 1928 as chapter 17. In 1931 the Tenth Legisla-

ture, chapter 82, repealed this chapter and adopted a code relating to the dairy industry which appears in the Arizona Code of 1939 as article 9 of chapter 50. The act created the office of state dairy commissioner and enacted in connection therewith over fifty sections for the full and complete regulation of the dairy industry. It placed upon the dairy commissioner the duty of enforcing its provisions and if that office has been abolished the remainder of article 9 of chapter 50, entitled, "Dairy and Dairy Products" is without any effect or force whatever, unless the contention of respondent that the duties of the dairy commissioner were transferred to another department be true.

However, notwithstanding the serious effect the repeal of the section creating the office of dairy commissioner has on the provisions regulating the dairy industry, it seems clear from a reading of chapter 105, Session Laws of 1941, that the legislature not only abolished that office but that it intended to do so. Its title is:

"An Act

"Relating to public health; creating the state department of health and defining its powers and duties; amending section 68–405; and repealing sections 68–101, 68–102, 68–103, 68–104, 68–105, 68–106 and 50–902, Arizona Code of 1939, and declaring an emergency."

And the body of the act itself contains section 15, which reads as follows:

"Repeal. Sections 68–101, 68–102, 68–103, 68–104, 68–105, 68–106, and 50–902, Arizona Code of 1939 (Sections 2678, 2679, Revised Code of 1928; section 1, chapter 103, laws of 1935; section 2680, Revised Code of Arizona, 1928; section 1, chapter 38, laws of 1931; section 2681, Revised Code of 1928 and section 2, chapter 82, laws of 1931), are hereby repealed. This section does not negative an implied repeal of any statute which conflicts with this Act."

■ It will be noticed that in repealing section 50–902, which creates the office of state dairy commissioner the legislature specifically mentions that section in this chapter, not only in both its title and the repealing section 15, but to be certain that repeal is effective it also designates particularly therein section 2 of chapter 82, Session Laws of 1931, of which section 50–902 is merely a codification. This removed any possibility of doubt as to the legislative purpose to repeal that particular section, and this is true, notwithstanding the suggestion in the brief of *amici curiae* that an examination of the house journal discloses that in its passage through the House of Representatives, house bill No. 1, which later became chapter 105 of that session, was amended in such a way as to show that section 50–902 was named in the repealing section as well as in the title by mistake.

■ Just why the legislature repealed section 50–902, *supra,* of the dairy code and at the same time made no reference to the other fifty-odd sections contained in it does not appear. It is difficult to believe that the intention was to take such a backward step as to deprive the dairy industry of the protection it had enjoyed for so many years. Had such been the purpose, the lawmaking body would undoubtedly have accomplished it by repealing article 9 of chapter 50, *supra,* instead of one only of its fifty-four sections. The fact that it did not do so shows conclusively that it did not intend that such protection should be discontinued. This is further indicated by the fact that in the general appropriation bill, adopted one day later, it made an appropriation of $17,700 for the expenses of the office for the thirtieth and thirty-first fiscal years of the state. However, it did not place upon anyone else the duty of administering the provisions of the dairy code. The intention evidently was to take care of this in some other way but, as

often occurs in the rush of the closing days of a session, the matter was entirely overlooked. This situation thus brought about, it appears to us, must be one of those the legislature had in mind when it enacted section 1–107, Id., which reads as follows:

"*Act abolishing office.*—A person who at the time an act takes effect holds office under a law by such act repealed, continues to hold the office according to the tenure of the law repealed, unless the duties of such office are expressly transferred to some other office."

The petitioner was holding the office of dairy commissioner under section 50–902, *supra,* on June 16, 1941, when chapter 105 of the Fifteenth Legislature, which repealed it, took effect, and under section 1–107, *supra,* he continues to hold it according to the tenure of section 50–902, that is, during the term of the governor who appointed him and for the compensation therein fixed. This particular rule of statutory construction seems to solve perfectly the problem presented by the facts of this case, while without it the dairy industry would have no protection whatever until further action by the legislature, notwithstanding the $17,700 set aside in the general appropriation bill for the expenses of the office of commissioner for the two years beginning July 1, 1941.

The respondent contends that the duties of the dairy commissioner were expressly transferred by chapter 105, *supra,* to the state department of health and that section 1–107, *supra,* has no application. The language upon which this contention rests is that the act creating this department provides, among other things, for a "division of sanitary engineering" and a "state laboratory" and also makes it the duty of the superintendent of health to "administer the laws relating to health and sanitation." The department, according to the act, consists of the state board of

health, the superintendent of public health and several divisions enumerated therein and succeeds to and is vested with the duties, powers, purposes, responsibilities and jurisdiction theretofore vested by law in the state board of health, the superintendent of public health, the registrar of vital statistics, and several other public health agencies, but nowhere in the act does it expressly transfer the duties of the state dairy commissioner to the state department of health or any other office. Some of these duties do not in fact concern health regulations at all but are extremely important to the dairy industry. These considerations, therefore, especially when coupled with the fact that as introduced house bill No. 1 provided that the state department of health should be vested with the duties and powers of the state dairy commissioner and his deputies but as finally passed did not carry this provision, lead to the inevitable conclusion that in the enactment of it the legislature had no intention of transferring the dairy commissioner's duties to the state department of health.

Inasmuch as it is clear that section 50–902, *supra,* creating the office of state dairy commissioner was repealed by chapter 105, *supra,* and that this raised a serious question as to the right of that officer to continue to discharge the duties of the office, respondent's course in requiring a judicial determination of the question whether the expenditures made and claimed by him were for a public purpose, was a proper and commendable one to take.

The alternative writ is made peremptory.

LOCKWOOD, C. J., and ROSS, J., concur.